In the Matter of Lawetia Ann Davis
and Katherine Marie Davis, Children.

## STATE ex rel JUVENILE DEPARTMENT OF DOUGLAS COUNTY,
*Respondent,*

*v.*

## BUTTERFIELD et al,
*Appellants.*

(5516; CA A27845)

681 P2d 171

Alan R. Scott, Jr., Umpqua Valley Defense Services, Inc., Roseburg, argued the cause and filed the brief for appellant Barbara Butterfield.

David G. Terry, Roseburg, argued the cause and filed the brief for appellant Lawetia Ann Davis.

Brenda Peterson, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were David Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Christine L. Dickey, Assistant Attorney General, Salem.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Mother appeals an October, 1982, order that adjudicated her nine-year-old daughter, Katherine, to be a ward of the court and placed her in the custody of Children's Services Division (CSD). She argues that there was insufficient evidence to support the trial court's finding that one, and probably another, of Katherine's brothers sexually abused her. Mother and her 18-year-old daughter Lawetia also appeal the court's dispositional order made in March, 1983, after Lawetia became 18, continuing her wardship and CSD's custody of her.[1] We affirm both orders.

■    In its 1982 order the trial court found:

"The Court finds by clear and convincing evidence that Lawetia Ann Davis is 17 years old and that Katherine Marie Davis is 9 years old; that Lawetia Ann Davis was subjected to sexual abuse by Charlie Davis; that Katherine Marie Davis was subjected to sexual abuse by Charlie Davis; that the children's mother and stepfather, Barbara Butterfield and Russell Butterfield, knew of the sexual abuse occurring upon said children and failed to protect the children therefrom, and that at times, said Barbara and Russell Butterfield refused to cooperate with Children's Services Division; the Court further finds that Katherine Marie Davis was probably subjected to sexual abuse by Danny Davis * * *."

We review *de novo,* and we agree with the trial court's findings respecting Katherine. ORS 419.500(1); *see also* ORS 419.476(1)(c) and (e).

Mother and Lawetia argue that, because Lawetia was over 18 in March, 1983, the court could not then continue her wardship and CSD's custody. We disagree. The court made its 1983 order of disposition under ORS 419.507(1)(b).[2] Pursuant

---

[1] Neither mother nor Lawetia appeals from the portion of the 1982 order that adjudicated Lawetia, then 17, a ward of the court and placed her in CSD's custody.

[2] ORS 419.507 provides in part:

"(1) A child found to be within the jurisdiction of the court as provided in ORS 419.476(1), may be made a ward of the court. Where a child has been found to be within its jurisdiction, and when the court determines it would be in the best interest and welfare of the child, the court may:

"* * * * *

"(b) Place the child in the legal custody of the Children's Services Division for care, placement and supervision."

to ORS 419.511(1), the duration of that disposition "shall be for an indefinite period * * *. The period of any disposition shall not extend beyond the date on which the child becomes 21 years of age." Moreover, ORS 419.531 provides that the court's wardship over a child brought before it continues until the first to occur of five listed events, one of which is that the child "becomes 21 years of age." *See State ex rel Juv. Dept. v. Nagle,* 36 Or App 237, 584 P2d 338 (1978).

■    Mother and Lawetia argue, however, that ORS 419.511 and 419.531 apply only to children who have committed an act which would violate a law or ordinance if done by an adult. *See* ORS 419.476(1)(a). The court's dispositional authority pursuant to ORS 419.507(1)(a), (b) and (c), however, continues until a child is 21, regardless of whether the child is a law violator. Nothing in *Shrewsbury v. Larson,* 52 Or App 81, 627 P2d 910 (1981), cited by mother, is to the contrary.

■    Mother and Lawetia also argue that, when the 1973 Legislature enacted ORS 109.510 and lowered the age of majority to 18, it impliedly changed the 21-year limitation in ORS 419.511 and 419.531. We disagree.[3] The legislature amended ORS 419.511 in 1973 and 1983 and ORS 419.531 in 1979 and did not change the reference in those sections to "21 years of age." ORS chapter 418, covering child welfare services, is also consistent with our conclusion. Under ORS 418.015(2), CSD shall accept any "child" placed in its custody, as was Lawetia, by the court under ORS chapter 419. For purposes of ORS 418.015(2), the definition of "child," enacted as part of the same act that lowered the age of majority to 18, Or Laws 1973, ch 827, is an individual under 21 years of age. ORS 418.001. We conclude that, although the legislature has lowered the "age of majority" to 18, it has not removed the power of the court to continue Lawetia's wardship until she becomes 21.[4]

---

[3] ORS 109.510 provides:

"Except as provided in ORS 109.520, in this state any person shall be deemed to have arrived at majority at the age of 18 years, and thereafter shall have control of his own actions and business, have all the rights and be subject to all the liabilities of a citizen of full age." Or Laws 1973, ch 827, § 14.

[4] Mother argues that *In Re Carson,* 84 Wash 2d 969, 530 P2d 331 (1975), supports her argument that lowering the age of majority limits the jurisdictional authority of the juvenile court. However, the Washington statute provides:

Affirmed.

> "Except as otherwise specifically provided by law, all persons shall be deemed and taken to be of full age *for all purposes* at the age of eighteen years." RCW 26.28.010. (Emphasis supplied.)

On the basis of the words "for all purposes," the court found that the statute mandated the termination of jursidiction for juveniles at age 18. ORS 109.510 does not contain the words "for all purposes."